KLEES, Judge.
Plaintiff in these companion cases appeal the lower court’s dismissal of their respective petitions for mandamus. Plaintiff Rose Loving was a candidate for the Orleans Parish School Board in the October 1st primary election, and plaintiff Edwin E. Burks was a voter in that election. Both petitioners seek to have the election results (as a result of which Avra O’Dwyer was declared the winner) overturned and a runoff declared between O’Dwyer and Loving. The facts are as follows.
Three names appeared on the ballot as candidates for the Orleans Parish School Board from the Fourth District — O’Dwyer, Loving, and Ike Spears. Mr. Spears’ name showed up on the ballot even though he had withdrawn from the race on September 16, 1988. After the votes were tabulated, O’Dwyer, with 6,416 votes, was declared the winner; Loving received 5,920 votes, and Ike Spears received 787 votes. O’Dwyer obtained a majority only because Spears’ votes were not considered in arriving at the total. In her petition, Loving contends that Spears’ votes should have been considered, thus making the total number of votes cast 13,123 and a majority 6,561. Under this scheme, O’Dwyer (with 6,416) would fall short of a majority and be forced into a runoff with Loving. The petition of plaintiff Burks, who cast his vote for Spears, argues that the state’s failure to notify him of Spears’ withdrawal and failure to consider his vote in the total count unconstitutionally deprived him of the right to vote.
Defendants filed exceptions of no cause of action to both petitions, and the district court overruled the exceptions, but dismissed the petitions with prejudice. After reviewing the law in this matter, we affirm both judgments.
La.R.S. 18:502 reads as follows:
§ 502. Effect of withdrawal
A notice of withdrawal shall be effective when it is filed with the secretary of state, and the candidate who filed the notice no longer shall be qualified as a candidate in the election from which he withdrew. If the election ballot was printed with a withdrawn candidate’s name on it, any votes received by the withdrawn candidate shall be null and *163 void and shall not be counted for any purpose whatsoever. (Emphasis added.)
This act became effective June 26, 1981. In our view, the language of the act leaves no doubt that the legislature intended that the votes cast for a withdrawn candidate not be counted for purposes of determining a majority. In arguing the opposite, plaintiff Loving relies heavily on two cases, both decided before this act became effective. The first case, Murphy v. Democratic Executive Committee of the City of Harahan, 140 So.2d 249 (La.App. 4th Cir. 1962), is completely distinguishable, not only because it was not decided under R.S. 18:502, but also because it dealt with a situation where the voter had to select five candidates in order for the machine to record his vote. The second case, Wayne v. Green, 389 So.2d 102 (La.App. 1st Cir. 1980), writ denied, 390 So.2d 494 (La.1980), was decided prior to the 1981 amendment of 18:502, at a time when the statute merely provided that “any votes received by the withdrawn candidate shall be void.” 389 So.2d at 105. The First Circuit saw a conflict between this language and that of R.S. 18:511(A), which provides, in pertinent part:
A. Majority Vote. A candidate who receives a majority of the votes cast for an office in a primary election is elect-ed_ (Emphasis added.)
The court resolved this conflict by holding that the votes cast for a withdrawn candidate are votes cast for the “office” and therefore must be counted for purposes of determining a majority, despite the language of 18:502.
The Louisiana Supreme Court denied writs in Wayne, with three justices dissenting. 390 So.2d 494 (La.1980). In his dissent, Justice Blanche stated:
If “void” in R.S. 18:502 means “void”, it should mean that the votes cast for a candidate who withdrew from the race should not be counted for any purpose. By denying the writ, we approve of counting void votes to determine if one candidate has received a majority. This may be a proper result but it is a legislative function, and not a judicial one.
Following the decision in Wayne, the legislature amended R.S. 18:502 to read as Justice Blanche had suggested, that votes cast for a withdrawn candidate “shall not be counted for any purpose whatsoever.” The language of 18:511(A) remained unchanged, and is relied upon by plaintiffs herein. In 1987, the Third Circuit was faced with the issue of whether the votes cast for a candidate who had died before the primary election should be counted for purposes of determining a majority. Broussard v. Miller, 514 So.2d 765 (La. App. 3d Cir.1987), writ denied, 516 So.2d 122 (La.1987). The court found that the legislature had clarified the situation by amending R.S. 18:502, concerning withdrawn candidates, and applied that by analogy to R.S. 18:469(A), which provides that votes cast for a deceased candidate are “void”. Id. at 766. Reversing the trial court, the Third Circuit held that votes received by a deceased candidate do not constitute “votes cast for an office” under 18:511(A), and therefore such votes are not to be counted in determining the number necessary for a majority. Id.
We agree with the Third Circuit that the legislature has clearly manifested its intent by amending R.S. 18:502. Accordingly, we hold that the votes cast for Ike Spears in the primary election must not be counted for any purpose, including the purpose of determining a majority. The trial court correctly dismissed plaintiff Loving’s petition.
The only remaining issue is whether the trial court erred in dismissing the petition filed by plaintiff Burks. In his Reasons for Judgment, the trial judge noted that petitioner had not cited any statutory requirement, legal obligation or case law from any jurisdiction imposing an obligation upon the state to notify the electorate when a candidate withdraws from a race prior to the election; nor had he cited any authority supporting his argument that the state’s failure to give such notice violates any constitutional right.
The withdrawal of a candidate is a matter of public record. Under the civil law, persons are generally charged with *164 knowledge of what is in the public records. A member of the electorate has an obligation to keep informed about what is on the public records if he wants to cast a meaningful vote. We do not think the Constitution requires the imposition of any further obligation of notice upon the state.
The trial judge did not err in dismissing plaintiff Burks’ petition for failure to state a cause of action. Accordingly, the judgments dismissing defendant’s exceptions and dismissing with prejudice the petitions of plaintiffs Loving and Burks are affirmed.
AFFIRMED.